518 F.2d 720
 Claudiatte PIERCE, as surviving widow of Teddy Joe Pierce,
Deceased, for herself and Letitia Pierce, minor
child of Teddy Joe Pierce, Deceased,
Plaintiffs-Appellants,
v.
COOK & CO., INC., Defendant-Appellee.
Stephen ELLENWOOD, a minor under the age of 21 years, who
sues by Judson Ellenwood, as next friend,
Plaintiff-Appellant,
v.
COOK & CO., INC., Defendant-Appellee.
 No. 97-70.
 United States Court of Appeals,
Tenth Circuit.
 Submitted May 1, 1975.
Decided June 24, 1975.
 
 Kent C. Phipps, Phipps, Johnson & Holmes, Ponca City, Okl., for plaintiffs-appellants.
 Page Dobson, of Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, Okl., for defendant-appellee.
 Before LEWIS, Chief Judge and BREITENSTEIN, HILL, SETH, HOLLOWAY, McWILLIAMS, BARRETT and DOYLE, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Plaintiffs-appellants have moved for relief under Rule 60(b), F.R.Civ.P., from a judgment of this court. The problem is that the same vehicular accident has produced divergent results in federal and state courts. We grant the motion and remand the case to the district court with directions.
 
 
 2
 Edwards, the owner and driver of a tractor-trailer combination, was hauling wheat for defendant-appellee Cook. On January 11, 1968, Edwards' rig collided on an Oklahoma highway with a car driven by Ted Pierce. Pierce was killed and passengers in his car were injured. Claudiatte Pierce brought suit in an Oklahoma state court for herself as surviving widow of Ted and for their minor daughter Letitia. Similar state suits were brought against Cook by Stephen Ellenwood and Mike Davis, passengers in the Pierce car.
 
 
 3
 On the motion of defendant Cook each case was removed to federal court on diversity grounds. The Mike Davis case was dismissed by the federal court on the motion of the plaintiff. It was later refiled in state court by co-guardians of Mike, a minor. The guardianship maneuver apparently destroyed diversity and prevented removal.
 
 
 4
 The federal district court granted defendant Cook summary judgment on the ground that under the Oklahoma decision in Marion Machine, Foundry & Supply Co. v. Duncan, 187 Okl. 160, 101 P.2d 813, the shipper, Cook, was not liable for the torts of the independent contractor, Edwards.
 
 
 5
 Claudiatte Pierce and Ellenwood appealed. They conceded the effect of the Marion Machine decision and argued that, because of the Motor Carrier Act, 49 U.S.C. § 301 et seq., federal common law controlled. We held that the Motor Carrier Act did not indicate a congressional intent to supersede state tort law with respect to liability of a shipper, and concluded that Oklahoma law controlled. Pierce v. Cook & Co., 10 Cir., 437 F.2d 1119.
 
 
 6
 In the Mike Davis case the Oklahoma state court gave summary judgment for Cook on the basis of the Marion Machine decision. The case then went to the Oklahoma Supreme Court which specifically overruled Marion Machine and said, Hudgens v. Cook Industries, Inc., Okl., 521 P.2d 813, 816:
 
 
 7
 "Where there is foreseeable risk of harm to others unless precautions are taken, it is the duty of one who is regularly engaged in a commercial enterprise which involves selection of motor carriers as an integral part of the business, to exercise reasonable care to select a competent carrier. Failure to exercise such care may create liability on the part of the employer for the negligence of the carrier."
 
 
 8
 The court remanded the case for jury trial. The case was then settled favorably to the plaintiff.
 
 
 9
 The Tenth Circuit decision became final in January, 1971. The Oklahoma Supreme Court decision became final in May, 1974. In November, 1974, Claudiatte Pierce and Ellenwood filed the pending Rule 60(b) motion for relief from judgment.
 
 
 10
 The first question is the propriety of consideration of the motion by the court of appeals. Movants seek relief as a matter of law from a judgment of this court. This is not a case like Wilkin v. Sunbeam Corporation, 10 Cir., 405 F.2d 165, cert. denied 409 U.S. 1126, 93 S.Ct. 940, 35 L.Ed.2d 258, where a motion was filed in the court of appeals for leave to file in the district court a Rule 60(b) motion on the grounds of newly discovered evidence and fraud. Saying that the district court was in a better position to decide the issues presented, we held that the motion was unnecessary. The procedural problems involved have been the subject of much discussion. Compare Wilkin with Brady v. Beams, 10 Cir., 132 F.2d 985, 986, cert. denied 319 U.S. 747, 63 S.Ct. 1032, 87 L.Ed. 1702; National Brake & Electric Company v. Christensen, 254 U.S. 425, 430, 41 S.Ct. 154, 65 L.Ed. 341; and Butcher & Sherrerd v. Welsh, 3 Cir., 206 F.2d 259, 262, cert. denied 327 U.S. 799. Because our judgment is final and mandate issued, the trial court could well believe that it is without power to determine a legal question contrary to the decision of the court of appeals. Accordingly, we shall consider the motion.
 
 
 11
 Rule 60(b) provides that a court may grant relief from a judgment on five stated grounds and then says: "(6) any other reason justifying relief from the operation of the judgment." The one-year limitation provided in the rule does not apply to (6).
 
 
 12
 A Rule 60(b) motion is addressed to the sound discretion of the court. Caribou Four Corners, Inc. v. Truck Insurance Exchange, 10 Cir., 443 F.2d 796, 799 and cases there cited. Quoting 7 Moore Federal Practice at p. 308 (1950 ed.), Radack v. Norwegian America Line Agency, Inc., 2 Cir., 318 F.2d 538, 542, says that Rule 60(b) gives the court a "grand reservoir of equitable power to do justice in a particular case." The court goes on to say that "the rule should be liberally construed when substantial justice will thus be served." Ibid.
 
 
 13
 An adjudication must at some time become final. We recognized this principle in the Collins litigation. There, the plaintiffs attacked the constitutionality of a Kansas statute and lost. Collins v. City of Wichita, Kansas, 10 Cir., 225 F.2d 132, cert. denied 350 U.S. 886, 76 S.Ct. 140, 100 L.Ed. 781. A year later in an unrelated case the Supreme Court held the Kansas statute unconstitutional. Plaintiffs then sought Rule 60(b)(6) relief which we denied, Collins v. City of Wichita, Kansas, 10 Cir., 254 F.2d 837, 839, saying, (1) "in extraordinary situations, relief from final judgments may be had under Rule 60(b)(6), when such action is appropriate to accomplish justice," and (2) "(a) change in the law or in the judicial view of an established rule of law is not such an extraordinary circumstance which justifies such relief." Collins differs from the instant case in that there the decisional change came in an unrelated case. Here it came in a case arising out of the same accident as that in which the plaintiffs now before us were injured. The question is whether we have here an extraordinary situation justifying Rule 60(b)(6) relief.
 
 
 14
 Our attention is called to no case considering the situation before us. Plaintiffs were forced into federal court by Cook's removal of their state court actions on diversity grounds. They lost because state law controls and the Marion Machine decision defeated their claims as a matter of law. Another party, exercising a stratagem not shown to be available to these plaintiffs, obtained the reversal of the Marion Machine decision and a settlement thereafter.
 
 
 15
 Research has disclosed only one case considering divergent results from a common vehicular accident and it afforded relief to the previously unsuccessful party. Gondeck v. Pan American World Airways, Inc., 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21, was concerned with a claim for death benefits under the Longshoremen's and Harbor Workers' Compensation Act. Two men were killed in the same accident. An award made by the Department of Labor to the survivors of one of the men was set aside in the United States District Court for the Southern District of Florida. The Fifth Circuit affirmed. United States v. Pan American World Airways, Incorporated, 5 Cir., 299 F.2d 74. The Supreme Court denied certiorari, 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499, and on October 8, 1962, denied rehearing, 371 U.S. 856, 83 S.Ct. 17, 9 L.Ed.2d 93.
 
 
 16
 The survivors of a second man killed in the same accident litigated in the Eastern District of Virginia and lost but the Fourth Circuit reversed and upheld the right to recover. Pan American World Airways, Incorporated v. O'Hearne, 4 Cir., 335 F.2d 70.
 
 
 17
 The survivors of the first then went back to the Supreme Court in 1965 with a petition for rehearing. The Supreme Court granted the rehearing, granted certiorari, and reversed the Fifth Circuit court of appeals. In so doing, it said, 382 U.S. at 27, 86 S.Ct. at 154:
 
 
 18
 " * * * since, of those eligible for compensation from the accident, this petitioner stands alone in not receiving it, 'the interests of justice would make unfair the strict application of our rules.' "
 
 
 19
 The reasons for relief in the instant case are more compelling than those in Gondeck. There two federal courts differed as to the construction and application of a federal statute. We are concerned with an action in which federal jurisdiction depends on diversity. In diversity jurisdiction cases the results in federal court should be substantially the same as those in state court litigation arising out of the same transaction or occurrence. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 74-75, 58 S.Ct. 817, 82 L.Ed. 1188; Guaranty Trust Co. v. New York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079; Hanna v. Plumer, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8; and Merchants Transfer & Warehouse Co. v. Ragan, 10 Cir., 170 F.2d 987, 991, aff'd 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520. Here they were not.
 
 
 20
 The unusual combination of events which have occurred make the situation extraordinary. The federal courts in which plaintiffs were forced to litigate have given them substantially different treatment than that received in state court by another injured in the same accident. The outcome determination principle mandated by Erie v. Tompkins has been violated.
 
 
 21
 Relief under Rule 60(b)(6) "is appropriate to accomplish justice" in an extraordinary situation. Collins, 254 F.2d at 839. Accordingly, our judgment heretofore entered in this case is vacated and the case is remanded. We do not set aside the judgment of the trial court. If plaintiffs file a Rule 60(b)(6) motion for relief from the trial court's judgment, that court shall consider the motion, and any response thereto, in the light of the Hudgens opinion, 521 P.2d 813, and of this opinion and shall make such determination as it deems proper.
 
 
 22
 Motion granted and case remanded with directions.
 
 
 23
 BARRETT, Circuit Judge (concurring in the result):
 
 
 24
 I concur in the result reached by the majority. Notwithstanding my strong disinclination to disturb a final judgment, I conclude that under the circumstances of this case that such is necessary in order to effect fundamental justice, thus justifying application of Rule 60(b)(6), Fed.R.Civ.P. on behalf of plaintiffs-appellants (hereinafter referred to as Pierce-Ellenwood).
 
 
 25
 Pierce-Ellenwood filed their respective actions in state courts. Defendant-appellee (hereinafter referred to as Cook) removed the actions to federal district court on diversity grounds.[1]
 
 
 26
 It is fundamental that in diversity cases, the federal courts must (as in the instant consolidated cases) accept the most recent pronouncement of state law. The difficulty with such reliance, however, is succinctly pointed up in the case at bar when the highest court in the state subsequently overrules the state law decision relied upon by the federal courts.
 
 
 27
 The "danger ahead" signal should always be out in diversity actions. The majority opinion evidences a most striking example.
 
 
 28
 We have held that the difficulties of ascertaining what the highest court in a state may subsequently determine the state law to be does not, in and of itself, afford sufficient grounds for the federal court to decline to exercise its jurisdiction to decide a diversity case properly before it. Holt v. King, 250 F.2d 671 (10th Cir. 1957); and see Preston v. Aetna Life Ins. Co., 174 F.2d 10 (7th Cir. 1949), cert. denied, 338 U.S. 829, 70 S.Ct. 80, 94 L.Ed. 504 (1949). And we have held that the views of a federal district judge, who is a resident of the state where the controversy arose in a case involving interpretations of the law of the state, carry extraordinary persuasive force on appeal where there are no state decisions on point or none which provide a clear precedent. United States v. Wyoming National Bank of Casper, 505 F.2d 1064 (10th Cir. 1974), (the absence of a controlling state decision); Hardy Salt Company v. Southern Pacific Transportation Company, 501 F.2d 1156 (10th Cir. 1974), (unsettled peripheral questions of state law); Casper v. Neubert, 489 F.2d 543 (10th Cir. 1973), (on unsettled law in his state); Stafos v. Jarvis, 477 F.2d 369 (10th Cir. 1973), cert. denied 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973), (not aided in its consideration by either administrative interpretation or judicial expression from state court); Industrial Indemnity Company v. Continental Casualty Company, 375 F.2d 183 (10th Cir. 1967), (no decisions from Oklahoma courts in point or which are analogous); Mitton v. Granite State Fire Ins. Co., 196 F.2d 988 (10th Cir. 1952), (the Colorado courts have not passed upon the right to interest in cases similar to the one before us and we are unwilling to overrule the considered appraisal of the Trial Judge).
 
 
 29
 In my view, Rule 60(b)(6) supra, should always be applied in order to relieve a party who did not invoke the jurisdiction of the federal court in a diversity suit from a judgment adverse to that which would otherwise have been favorable in the state court forums. One who invokes the jurisdiction of the federal court when the diversity requirements are present should pay the consequences of that election. A change in state law should not be cause for relief to one who has voluntarily selected that forum. Such a litigant is not entitled to the proverbial "two bites at the apple." Furthermore, such application should do much to promote and strengthen proper Federal-State court relations.
 
 
 30
 LEWIS, Chief Judge, with whom SETH, Circuit Judge, joins, dissenting.
 
 
 31
 I am completely uncertain as to what impact the ruling of the majority has, or is intended to have, on established procedural and substantive law or in the administration of justice generally. The opinion would appear to recognize that relief under Rule 60(b) is directed to the sound discretion of the trial court (except in this case) and remands the case to the trial court for consideration under Rule 60(b)(6) but in accord with the views expressed in the opinion. There is, of course, no existent motion under Rule 60(b)(6), or any motion at all, before the trial court but the majority suggests to plaintiffs that one be filed. This unusual judicial direction is surprising especially since the case was presented to this court in reliance upon Rule 60(b)(5) and counsel for plaintiffs expressly disavowed reliance on Rule 60(b)(6) during oral argument. The impact, if any, of Rule 60(b)(6) was neither argued nor briefed for this court and the authorities cited in the majority opinion appear in the case for the first time.
 
 
 32
 By remanding the case to the trial court with "directions" the discretion of the trial court has apparently been aborted for all practical purposes through a pre-decision of this court on the merits. The majority appears to hold that divergent results from a common vehicular accident are, per se, grounds for relief under Rule 60(b)(6), at least in diversity cases. If my interpretation of the intended impact of the majority ruling is correct then the court has indeed plowed new ground for no present authority supports such a rule. Federal judgments in common disaster diversity cases can then only be considered as dormant, not final, even though the case be the inverse of the one we here consider. A paid judgment would seem to be recoverable and resultant confusion inevitable.
 
 
 33
 The factual background of this case is based on a common disaster and, although the majority opinion does not specifically so state, I assume that the majority ruling is intended to be limited by this "extraordinary circumstance." But the driving force of the ruling, the desire to obtain consistent results in state and federal cases involving state law, to me, seems equally applicable to identical accidents and even to such instances as this court considered in Collins v. City of Wichita, 254 F.2d 837, cert. denied, 350 U.S. 886, 76 S.Ct. 140, 100 L.Ed. 781. Perhaps such a breakthrough would be desirable; perhaps not, for consistency, even in criminal cases, is not an invariable exaction of the law. United States v. Cudd, 10 Cir., 499 F.2d 1239, 1242. In any event, I do not agree that the court has properly exercised its appellate function in this case and accordingly I dissent and join with Judge Seth in his expressed views.
 
 
 34
 SETH, Circuit Judge, dissenting, with whom LEWIS, Chief Judge, joins:
 
 
 35
 This began as a typical diversity case, and it really still is, but unfortunately as sometimes happens, after the decision the state case law changed. Some of the parties were in the state courts and some in the federal courts. This led to different results in the state and federal courts by reason of the sequence in which the cases were decided. The problem, and the "risk", in such cases is pointed up by the fact that the two cases arose out of the same accident, but otherwise the problem is no different than that which arises in many cases where the fact situations are only sufficiently comparable to call for the application of a particular legal doctrine.
 
 
 36
 The argument advanced by the majority is equally applicable to any diversity case, and the fortuitous circumstance of one accident makes no legal difference whatever, and certainly does not make one instance an "extraordinary circumstance" and the other not.
 
 
 37
 The decision was fully in accordance with Erie v. Tompkins when the federal case was decided by this court in January, 1971. The majority asserts that the fact that in November, 1974, when the Oklahoma Supreme Court changed the doctrine, the decision was not thereafter in accordance with Erie and thus should be changed. If this route is followed, many cases will come within this Erie justification advanced by the majority, no matter how many years may have elapsed. This will be a new post-decision or retroactive application of Erie which has interesting implications. The principles will be just the same in such cases. The time span is horrendous here as the accident happened in 1968, our decision was in 1971, and the state court decision creating the new doctrine was in 1974, and here it is 1975.
 
 
 38
 Collins v. City of Wichita, 254 F.2d 837 (10th Cir.), was correctly decided and should not be overruled as the majority has done. There is no reason to refer here to the need for the finality of judgments. The validity of the doctrine is evident, and there is no basis for the creation of exceptions based on purely fortuitous fact circumstances with no legal difference from many others.
 
 
 39
 The majority places reliance on Gondeck v. Pan American World Airways, Inc., 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21, where the Supreme Court did no more than require two different circuits to construe the same federal statute the same way. This is no more than a supervisory manifestation, and is of no help in a diversity problem such as this.
 
 
 40
 The appellants in the original case thought they could prevail on the issue of construction of a federal statute; they persisted in the federal courts after the defendants removed the case, and they lost in this court on the point they advanced. The other group of plaintiffs took the state route, overturned the theretofore prevailing state doctrine and won. The majority would here give the losing parties a second bite at the apple.
 
 
 41
 The points raised in the majority decision on the merits have been considered above, but they need not have been because the unusual thing the majority has done is to consider the motion as one directed to the "judgment" of this court. The proper procedure would seem to be to consider the motion as one for leave to file a 60(b) motion in the trial court, and to permit that court to consider the matter free of restrictions that may arise from our mandate issued in the original action. Rule 60(b) is intended for application to the trial courts. There is no point in this court seeking to apply the motion to its "judgment", and to decide the issue fully, to set such judgment aside, and to remand the case. All that is contemplated by the rules, at most, is that this court grant leave to file in the district court, as indicated above. Instead with the decision of this court on the merits, there is, of course, nothing for the trial court to decide. If it decides to follow the majority decision, a trial will be had. This is apparently mandated by the majority decision. But if the trial court for some reason feels that no relief is indicated under Rule 60(b), then the parties can appeal to this court, and the majority can decide the same question again. This in itself indicates that the 60(b) motion is properly addressed to the trial court, and not to this court.
 
 
 42
 Thus I would consider the motion as one for leave to file in the district court; to grant it without first deciding the merits, and so leave our judgment and mandate intact and so have the matter considered in the sequence the rules contemplate.
 
 
 
 [1]
 28 U.S.C. § 1441 provides, inter alia, for removal only if none of the parties joined and served as defendants is a citizen of the State in which the action is brought. 28 U.S.C. § 1332 vests original jurisdiction in federal district courts in all civil actions where the matter in controversy exceeds the sum of $10,000.00, exclusive of interests and costs, and is between (1) citizens of different States